IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SAM DRAGOSLAVIC,<br><br>    Plaintiff,<br><br>v.<br><br>ACE HARDWARE CORPORATION,<br><br>    Defendant. | Civil Action No. 2:17-cv-00141-JRG<br><br>Judge:  Hon. Rodney Gilstrap<br><br>Jury Trial Demanded |

**PLAINTIFF SAM DRAGOSLAVIC'S RESPONSE IN OPPOSITION TO DEFENDANT ACE HARDWARE CORPORATION'S MOTION TO DISMISS (DOC. NO. 13)**

## I.    STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Local Rule CV-7(a)(1), the issues to be decided by the Court are:

1. Whether the allegations in Plaintiff Sam Dragoslavic's Complaint satisfy the standards for pleading;

2. Whether Dragoslavic has standing to seek injunctive relief; and

3. Whether Ace's objections to Dragoslavic's class allegations should be deferred to the class certification stage of the case.

As set forth below, the answer to each of these issues is yes.

## II.    LEGAL STANDARDS

Ace's recitation of the involved legal standards is largely correct. To the extent a standard is incorrect, it is addressed in context below.

## III.    ARGUMENT

### A.    The Allegations of Dragoslavic's Complaint Satisfy Applicable Rule 9(b) Heightened Pleading Standards

Ace asserts in its Motion to Dismiss ("Mot.") that all Dragoslavic's claims are subject to the heightened pleading standards of Rule 9(b), and that the detailed allegations of Dragoslavic's Complaint Doc. No. 1 ("Compl.") do not satisfy those standards.[1] Ace is incorrect.

#### 1.    Legal Standards Governing Dismissal Under Rule 9(b)

Dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Such dismissals are disfavored and a motion to dismiss under the rule is rarely granted. *Lowrey v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997). The Court must construe the complaint's allegations, including facts included in exhibits thereto,

---

[1] Ace also cites to Rule 8 pleading standards regarding plausibility, and seeks dismissal under Rule 8. *See* Mot. at 2-3, 6. However, Ace limits its arguments to the heightened pleading standards under Rule 9(b). Ace's request for dismissal under Rule 8 should be summarily denied.

liberally in favor of the plaintiff and all well pleaded facts must be taken as true, with any doubts regarding sufficiency of an allegation being resolved in favor of the plaintiff. *Id.; see also Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003); *Caine v. Hardy*, 943 F.2d 1406, 1411 n.5 (5th Cir. 1991); *see also* Fed. R. Civ. P. 10(c).

Despite requiring particularity, "fraud may be pleaded without long or highly detailed particularity." *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 632 (5th Cir. 1999) (citing 12A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE, App. D, Form 13 (1999)). Also, if it appears that plaintiff could state a claim upon which relief could be granted through an amended pleading, the court should grant leave to amend. *People's Choice Home Loan, Inc. v. Mora*, No. 3:06-CV-1709-G, 2007 U.S. Dist. LEXIS 16624, at *12-13, 2007 WL 708872, at *4 (N.D. Tex. Mar. 7, 2007), (citing *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 608-09 (N.D. Tex. 2006)); *see also United States ex rel. Wilkins v. North Am. Constr. Corp.*, 173 F. Supp. 2d 601, 614 (S.D. Tex. 2001).

      2.      <u>Dragoslavic's Fraud-Based Claims Are Adequately Pled Under Rule 9(b)</u>

Ace asserts that Dragoslavic must "specify the allegedly fraudulent statements, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" in order to satisfy Rule 9(b) standards. Mot. at 3, (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010)). The allegations of Dragoslavic's Complaint easily meet these requirements.[2]

---

[2] Contrary to Ace's assertions, not all Dragoslavic's claims are subject to heightened pleading standards. For example, Dragoslavic's claim for negligent misrepresentation is not subject to the requirements of Rule 9(b). *Infomart (India), PVT., LTD. v. Metrowerks Corp.*, 3:04-cv-1299-N, 2005 U.S. Dist. LEXIS 11095, at *17-18 (N.D. Tex. Feb. 7, 2005).

### a. The Complaint Identifies Ace as the Speaker

Ace is identified as the speaker in the very first numbered paragraph of Dragoslavic's Complaint:

> Ace purports to be "the helpful place," but its marketing of certain products as "Solid Brass" is anything but helpful to Ace's consumers. Indeed, Ace has intentionally and systematically deceived consumers *by unequivocally stating on the front and back outside packaging of certain products that the products are "Solid Brass" when, in fact, they are not* (hereinafter referred to as the "Falsely Marked Products").

Compl. ¶ 1 (emphasis added). Thus, the Complaint reasonably suggests that those products sold by Ace during the limitations period that include on the packaging the phrase "Solid Brass," and the product is not made of solid brass, comprise the universe of Falsely Marked Products. Numerous other paragraphs of the Complaint also identify Ace as the speaker. *See id.* at ¶¶ 15-21, 34-35, 38, 88-89, 95-96, 102-103, & 107.

### b. The Complaint Specifies and Explains Ace's Fraudulent Statements

Again, the very first numbered paragraph of Dragoslavic's Complaint alleges that Ace has falsely represented to Ace customers that the universe of Falsely Marked Products are made of solid brass, and that those representations were fraudulent because those products, in fact, are not made of solid brass. Compl. ¶ 1. Other paragraphs of Dragoslavic's Complaint contain further detailed allegations explaining why Ace's "solid brass" representations, when applied to a specific subset of the Falsely Marked Products, are fraudulent. *See id.* at ¶¶ 9-19. Dragoslavic's Complaint then explains that, by virtue of its fraudulent assertions that Falsely Marked Products are made of solid brass, Ace was able to charge a premium price for the Falsely Marked Products. Compl. ¶¶ 17-19, 107-108.

### c. The Complaint Describes When and Where the Fraudulent Statements Were Made

Dragoslavic alleges that the fraudulent statements were applied to both the front and back of the packaging for the Falsely Marked Products. *Id.* at ¶¶ 1, 17-19. Exhibits A and C to the Complaint are photographs of exemplary Falsely Marked Products showing the fraudulent statements applied to the front and back of the packaging. Dragoslavic alleges that Ace sells its hardware products through affiliated retail stores and that "Ace has marketed and sold Falsely Marked Products in [44] states and the District of Columbia." *Id.* at ¶¶ 6, 38. Dragoslavic also alleges generally in the Complaint that Ace's unlawful practices are ongoing. *Id., see, e.g.,* ¶ 15 ("The Falsely Marked Products, marketed and sold under the Ace brand, include a brass-colored emblem in the shape of a shield with the words "Solid Brass" prominently inscribed on the product packaging") and ¶ 24 ("The individual Plaintiff is a member of each Class he seeks to represent, previously being a handyman and contractor and currently being a project manager for a home builder"). Dragoslavic also alleges that he purchased Falsely Marked Products in reliance on Ace's fraudulent statements:

> The Plaintiff and the Class he represents are all purchasers of Falsely Marked Products marketed and sold by Ace. Due to the illegal marketing and sale of Falsely Marked Products that are, in fact, not solid brass, Ace has represented that goods are of a particular standard, quality, or grade when they are of another. This practice, which has caused damage to Plaintiff and the Class, is in direct violation of state consumer protection statutes and other applicable laws.

*Id.* at ¶ 27. Construed in Dragoslavic's favor, these allegations together adequately describe when and where Ace's fraudulent statements were made.

Ace argues that "particularity" requires allegations of the date and location of the stores where Dragoslavic purchased Falsely Marked Products. Mot. at 2. On the contrary, it is sufficient that Dragoslavic has identified the fraudulent statement appearing on the packaging of all Falsely

4

Marked Products and that he relied on that fraudulent statement in purchasing Falsely Marked Products. *See, e.g., Tsao v. Ferring Pharms., Inc.*, 4:16-cv-1724, 2017 U.S. Dist. LEXIS 26075, at *23 (S.D. Tex. Feb. 24, 2017) (court not requiring purchase date and store location to meet Rule 9); *see also Shakeri v. ADT Sec. Servs.*, 3:13-cv-2852-D, 2014 U.S. Dist. LEXIS 157250, at *9-10 (N.D. Tex. Nov. 6, 2014) (specific dates not required to satisfy Rule 9(b)). However, should the Court believe that further detailed allegations about Ace's fraudulent statement are required, Dragoslavic has additional facts to allege, including the stores where he purchased Falsely Marked Products and that the purchases happened within the limitations period.

      **B.**      <u>**Dragoslavic Has Article III Standing to Seek Injunctive Relief**</u>

Ace claims Dragoslavic does not have standing to sue for issuance of a prospective injunction that would preclude it from continuing to apply the fraudulent "solid brass" statement on products that are not made of a solid brass material. Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); *see also Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009). First, the plaintiff must have an "injury in fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent." *Id.* Second, the plaintiff must establish a causal connection between the injury and a defendant's conduct. *Id.* Third, the plaintiff must demonstrate a likelihood that the injury will be redressed if it prevails in the action. *Id.* at 561. "For injunctions, an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th Cir. 2001).

5

The only element of "standing" upon which Ace presses for dismissal of the Permanent Injunctive Relief claim (7th Claim for Relief) is that the Complaint allegedly fails to demonstrate that Dragoslavic is likely to suffer future injury through prospective purchase of one or more Falsely Marked Products. Mot. at 6-8. The Complaint defines the universe of Falsely Marked Products. Compl. ¶ 1. It also states that Dragoslavic purchased one or more Falsely Marked Products from Ace. *Id.* at ¶¶ 4 & 16. The Complaint further states that Ace has sold (though unstated, inferentially present) during the limitations period, numerous Falsely Marked Products beyond the two Falsely Marked Products identified in the Complaint. *Id.* at ¶¶ 17-21. Dragoslavic further alleges that he is a class member by virtue of "currently being a project manager for a home builder." *Id.* at ¶ 24. Finally, the Complaint states that there "exists an imminent likelihood of continuing irreparable injury to Plaintiff . . . that will be prevented by injunctive relief." *Id.* at ¶ 116. Taken in the light most favorable to Dragoslavic, these allegations must mean Dragoslavic is likely in the future to rely upon the "Solid Brass" statement by Ace and purchase a product from Ace that is not made of solid brass, and will be damaged by that fraudulent statement unless an injunction requiring all products so marked to actually be made of solid brass. Dragoslavic is thus entitled to seek injunctive relief through his Complaint. However, should the Court believe that further detailed allegations about Dragoslavic's anticipated future hardware purchasing practices from Ace showing why standing for an injunction is plausible, the allegations could be pled.

C. **Class Claims**

The last three sections of Ace's Motion do not attack any specific claim for relief. Instead, Ace employs Rule 12(b)(6) to attempt to prematurely litigate the class allegations in this case before it produces even a single document. The Court should not make such important decisions in a factual vacuum. The more prudent course is to address class certification issues after necessary

6

discovery, in a fully-briefed Rule 23 certification context. As one court noted, "challenges to class allegations should not be addressed in a 12(b)(6) context – but should instead be addressed at the time of a motion to certify a class pursuant to Rule 23." *Smith v. Washington Post Co.*, 962 F.Supp.2d 79, 90–91 (D.D.C. 2013) ("[C]ourts rarely grant motions to dismiss or strike class allegations before there is a chance for discovery…."); *see also Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

Dragoslavic requests that the Court recognize Ace's obvious efforts to put the proverbial cart before the horse and deny the Motion with respect to the class allegations of the Complaint. Should the Court disagree, Dragoslavic requests class discovery to appropriately address the issues raised in Ace's Motion.

      1.      <u>Class Common Law Fraud Claims</u>

Ace incorrectly argues that common law fraud claims cannot be *pled* on a classwide basis. Indeed, such claims can be—and routinely are—properly pled. Whether those same classwide allegations can survive a motion for class certification is a determination for a later day when, pursuant to Federal Rule 23, this Court decides if Mr. Dragoslavic and his counsel are appropriate representatives of a certifiable class. Ace admits as much in its Motion.

One of the two cases Ace so heavily relies upon is a case in which the district court not only allowed the pleading of fraud claims asserted on behalf of a putative class, it certified the claims for class treatment. *See Sandwich Chef of Texas v. Reliance Nat'l Indem. Ins., Co.*, 319 F.3d 205 (5th Cir. 2003). In *Sandwich Chef*, the Fifth Circuit did reverse the district court's certification order, but the lengthy opinion did not address any pleading insufficiencies in the case.

7

Therefore, it does not stand for Defendant's bold proposition that the classwide fraud claims in the instant case have been improperly *pled* and are subject to Rule 12 dismissal at this early juncture.

Similarly, in *St. Gregory Cathedral Sch. v. LG Elecs., Inc.*, 2015 WL 5604763 (E.D. Tex. Sept. 23, 2015)*,* Judge Schneider (long after the case was at issue and had proceeded to the Rule 23 certification analysis) found that a lack of uniformity in the marketing of defendant LG's heating products caused individual issues to predominate over common ones, and thus precluded class treatment at the certification stage. But, again, and like *Sandwich Chef,* the district court order in *St. Gregory* does not dictate an early Rule 12(b)(6) dismissal of the common law fraud claims alleged in the Dragoslavic Complaint. Ace's citation to the oft-quoted decision in *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360 (E.D. La. 1997), is inapplicable for the same reason.

The lone case cited by Ace as precedent for dismissal of classwide fraud allegations at the initial pleading stage, is distinguishable. In *John v. Nat'l Sec. Fire and Cas. Co.,* 501 F.3d 443 (5th Cir. 2007), the Fifth Circuit affirmed the extraordinary remedy of dismissal of an already amended complaint "because the [plaintiffs] do not contend that the class they propose is ascertainable, but instead propose [for the first time on appeal] two newly defined classes." Here, Dragoslavic maintains that his proposed class is ascertainable, and does not propose newly defined classes at this infantile phase of the case.

It is true, as Ace points out, that many courts have held that fraud-based claims are not amenable to classwide treatment. It is also true that many other courts have determined that such claims can be resolved on a classwide basis. *See, e.g., In re Mounce*, 390 B.R. 233, 250 (Bankr. W.D. Tex. 2008) ("Texas fraud jurisprudence is thus flexible enough to allow a fraud plaintiff to establish reliance and proximate cause without resorting to direct evidence of each class member's

8

actual reliance."). The key factors driving these disparate opinions are the nuanced legal *and factual* issues that require at least some discovery of Ace.[3]

## 2. Dragoslavic Has Standing to Assert Violation of Consumer Protection Laws

Ace's argument that Dragloslavic lacks standing to bring claims for Ace's violations of consumer protection statutes, other than for claims based upon law from Dragoslavic's home state of Texas, suffers from the same temporal infirmities as Ace's arguments regarding common law fraud. Such questions are germane to and a matter properly deferred for class certification analysis, and should not be included in a threshold pleadings requirement analysis. The Supreme Court has directly addressed this issue in two cases finding that Rule 23 certification issues should be addressed before examining the standing requirements for other class members. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). In *Ortiz*, the Court explained:

> Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits. But the class certification issues are, as they were in *Amchem*, "logically antecedent" to Article III concerns, 521 U.S., at 612, 117 S.Ct. 2231, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first….

*Ortiz*, 527 U.S. at 831.

Moreover, even at the appropriate class determination stage, courts have held that an individual class plaintiff can have standing to assert non-federal question claims based on laws in

---

[3] Defendant fails to note authority subsequent to *Sandwich Chef* that expressly rejects application of that case in the context of consumer fraud cases. In *In re Mounce*, defendant Wells Fargo made broad statements asserting that fraud-based claims are not susceptible to class treatment. Wells Fargo, like Ace here, relied upon *Sandwich Chef* to support its legal position. The *Mounce* court noted the limited applicability of *Sandwich Chef* to claims premised on RICO and refused to extend it to consumer fraud cases. *In re Mounce*, 390 B.R. at 250–51. ("The Fifth Circuit has not had the opportunity to discuss class certification in the context of Texas common law fraud.")

9

states where the plaintiff did not reside or purchase a product, or even where the laws of the various states may not provide a claim for the misconduct alleged. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011). In *Sullivan*, the district court certified two classes for purposes of settlement of an antitrust claim brought by two individuals and a small jewelry company who, collectively, represented both direct and indirect purchasers of diamonds. The Third Circuit affirmed the lower court's certification. Differences among various state antitrust, consumer protection and unjust enrichment laws, the *Sullivan* court reasoned, did not defeat the predominance requirement of Rule 23 in the presence of "exceedingly common issues" stemming from the defendant's conduct that were common as to all class members. *Id.* at 302 (Where a "sufficient constellation of common issues binds class members together," variations in applicable laws did not foreclose class certification.) (citing *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)). Certainly, if the *Sullivan* plaintiffs can represent class members from states with differing (and even nonexistent) laws at the class certification stage, Dragoslavic should be afforded standing to survive Defendant's untimely dismissal request. And, the *Sullivan* court, like in *Ortiz,* also distinguished between two forms of standing:

> Statutory standing "is distinct from jurisdictional standing in that 'Article III standing is required to establish a justiciable case or controversy within the jurisdiction of the federal courts,' whereas 'lack of [statutory] standing affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court,'" and "should not be a predicate for asserting a claim in the first place."

*Id.* at 307 (parenthesis added and internal citations omitted).

Here, Ace does cite two district court orders dismissing state-based antitrust and consumer protection claims from states where the named plaintiffs do not reside. In both cases, however, the dismissal was without prejudice and the plaintiff was granted leave to amend the pleadings to add potentially representative class members. *See In re Flash Memory Antitrust Litig.*, 643

F.Supp.2d 1133, 1164 (N.D. Cal. 2009); *In re Checking Account Overdraft Litig.,* 694 F.Supp.2d 1302,1325 (S.D. Fla. 2011).

Similarly, other cases cited by Defendant do not mandate dismissal of nationwide claims at the pleading phase. *Lewis v. Casey,* 518 U.S. 343 (1996), for example, merely stands for the general proposition that the named plaintiff must be one who has suffered the alleged injury or injuries, as opposed to one who, despite being uninjured, nevertheless attempts to bring claims on behalf of those who were. *Id.* at 357 ("The general allegations of the complaint [ ] may well have sufficed to claim injury by named plaintiffs, and hence standing to demand remediation, with respect to various alleged inadequacies in the prison system, including failure to provide adequate legal assistance to non-English-speaking inmates and lockdown prisoners. That point is irrelevant now, however, for we are beyond the pleading stage."). *Lewis*, which did not involve allegations of multi-state consumer protection statutes, does *not* stand for the sweeping proposition that a separate class representative is required for every state-based class action claim.

### 3. Dragoslavic's Nationwide Class Allegations Should Not Be Dismissed

Lastly, Ace argues that the Court should reject Dragoslavic's proposed "nationwide" class as such class would necessarily be unmanageable. The cases cited by Ace are distinguishable from the instant case in that they are (or stem from) decisions made at the class certification stage of the case.[4] Thus, Ace's arguments are again premature and incorrect and should be addressed in the context of a Rule 23 motion for class certification.

---

[4] In *Becnel v. Mercedes-Benz USA, LLC,* No. 14-0003, 2014 WL 2506506 (E.D. La. June 3, 2014) the district court initially granted, in part, and denied, in part, defendant Mercedes-Benz's motion to dismiss, and deferred ruling on the Motion to Strike Class Allegations, that was also before the court at the time of the ruling on the original motion to dismiss. Defendant here has not filed a separate motion to strike class allegations.

11

Other courts have done just that. In *Bohlke v. Shearer's Foods, LLC*, 2015 WL 249418, at *2 (S.D. Fla. Jan. 20, 2015), plaintiff brought a nationwide class action against the manufacturer of snacks alleging fraudulent labeling. The defendant brought a motion to dismiss the "nationwide" claims arguing, as Ace does here, that the claims were not susceptible to class treatment because the court would "need to apply the laws of fifty-one different jurisdictions with respect to the proposed nationwide classes; and the laws of these fifty-one jurisdictions are materially different, making certification of nationwide classes improper." *Bohlke*¸ 2015 WL 249418 at *1. The court, holding the motion was premature, reasoned as follows:

> The Court does not find Defendant's argument on this point particularly persuasive; Plaintiff could ultimately move to certify a very limited "nationwide" class, perhaps one consisting of a limited number of states, such that the laws of the jurisdictions involved are sufficiently compatible to support certification under Rule 23. In short, the issues Defendant raises may never materialize.

*Id.* *2. This is particularly true where, as here, the Dragoslavic has reserved the right to modify or amend his class definition as the evidence in the case develops. Compl. ¶ 23 ("Subject to information that may be obtained through further investigation and discovery, the Class definition may be modified, expanded or narrowed by amended complaint.").

Moreover, numerous courts have concluded that nationwide consumer fraud cases are manageable if appropriately grouped into manageable sub-classes. *See, e.g., In re McCormick & Co., Inc.*, 2016 WL 6678340 at *10 (D.D.C. Nov. 11, 2016) ("Multi-state class claims should not be dismissed if it is possible that the plaintiffs could demonstrate a manageable grouping of the state laws."); *Manual for Complex Litigation*, *Fourth* § 22.634, p. 412 (2004) ("If the choice-of-law and subsequent analysis show little relevant difference in the governing law, or that the law of only a few jurisdictions applies, the court might address these differences by creating subclasses or by other appropriate grouping of claims."). In fact, Ace recognizes that grouping of claims may

be appropriate when it cites examples of differences between and similarities among the various consumer protection statutes. *See, e.g.,* Mot. at 14. As in *McCormick*, Ace's argument proves Dragoslavic's point:

> To bolster their contention that the consumer protection statutes at issue are too variable to permit class certification, defendants argue that the statutes incorporate multiple standards about reliance and the availability of punitive damages. Specifically, defendants identify three different requirements with respect to reliance and two categories for whether punitive damages are available. The problem with this argument is that it actually suggests the possibility of grouping. Given that grouping of consumer protection statutes might be possible, it would be inappropriate to dismiss plaintiffs' claims without giving them an opportunity to demonstrate that there are workable groupings. This is especially true because plaintiffs may not seek to certify a class under all of the states pled in the complaint.

*In re McCormick & Co., Inc.*, 2016 WL 6678340, at *11.

As discovery progresses, it may become clear that the appropriate law to be applied to all claims springs from a single jurisdiction with the most significant interest in the fraudulent conduct at issue. For example, in *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 118 (D.N.J. 2010), plaintiffs moved to certify a nationwide class of consumers who were defrauded by defendant's conduct. The defendant contended that the court should refuse to certify a nationwide class "because each Plaintiff's claim is governed by the law of his or her home state…." *Id.* at 118. The court disagreed holding instead that the New Jersey consumer protection laws would be used to resolve the claims of all plaintiffs nationwide. In so doing, the court focused on the fact that the fraudulent scheme was conceived, perpetrated and emanated from New Jersey – hence, New Jersey had the most significant nexus to all the plaintiffs' claims.

Without discovery, Dragoslavic cannot provide the Court with sufficient information to determine whether a similar approach might be prudent in this case. As noted above, it appears that the nexus of the fraudulent scheme in this case may be Illinois. If so, it may be possible for the Court to try this matter under the consumer protection laws of a single state as in *In re*

*Mercedes-Benz Tele Aid*. If granted, Ace's rush to dismiss these claims would deny Dragoslavic that opportunity.

## IV. CONCLUSION

Dragoslavic requests Ace's Motion be denied in its entirety. However, to the extent the Court believes a claim is not properly pled, but that additional proposed allegations could be added to make the claim properly pled, Dragoslavic requests leave to file a First Amended Complaint.

Dated: May 9, 2017

                            Respectfully submitted,

                            */s/ Michael C. Smith*
                            Michael C. Smith (TX #18650410)
                            SIEBMAN, BURG, PHILLIPS &
                              SMITH, LLP
                            113 East Austin Street
                            PO Box 1556
                            Marshall, TX 75671
                            Phone: (903) 938-8900
                            michaelsmith@siebman.com

                            - and -

                            Benjamin B. Lieb *(pro hac)*
                            TALUS LAW GROUP LLC
                            2816 South Adams Street
                            Denver, CO 80210
                            Phone: (303) 246-4767

                            - and -

                            Joseph J. Zonies *(pro hac)*
                            Anthony L. Giacomini *(pro hac)*
                            Gregory D. Bentley *(pro hac)*
                            ZONIES LAW LLC
                            1900 Wazee Street, Suite 203
                            Denver, CO 80202
                            Phone: (720) 464-5300

                            ATTORNEYS FOR PLAINTIFF

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 9, 2017.

/s/ *Michael C. Smith*
Michael C. Smith