**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| SAM DRAGOSLAVIC<br>on behalf of himself<br>and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ACE HARDWARE CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 2:17-CV-00141-JRG** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ace Hardware Corporation's ("Ace Hardware") Motion to Dismiss Plaintiff's Class Action Complaint (Dkt. No. 13) ("the Motion"). Having considered each Parties' arguments and for the reasons set forth below, the Motion is **GRANTED**.

## I.    Background

On February 17, 2017, Plaintiff Sam Dragoslavic ("Dragoslavic" or "Plaintiff") filed this lawsuit, on behalf of himself and a proposed class of others similarly situated, alleging that Defendant Ace Hardware made false or misleading statements about its products. Specifically, Plaintiff argues that Ace Hardware labeled "certain products" as "Solid Brass" even though these products are not entirely made of brass. (Dkt. No. 1 at ¶ 1.) The Complaint includes no further description of the products at issue except for mention of two examples. (*Id.* at 17-20.)

Plaintiff Dragoslavic has sought relief on behalf of himself and putative class members under the Texas Deceptive Trade Practices Consumer Protection Act and the laws of 44 other states and the District of Columbia. (Dkt. No. 1 at ¶¶ 37–86.) Plaintiff does not allege that he purchased products or resides in any of these states, except Texas. (*Id.* at ¶ 5.)

Defendant Ace Hardware is incorporated in Delaware and has its primary place of business in Illinois.  (*Id.* at ¶ 6.)  It operates as a nationwide cooperative in which stores in various communities, including throughout Texas, operate under the same name.  (*Id.*)

On April 25, 2017, Ace Hardware filed the instant Motion seeking to dismiss Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim.  (Dkt. No. 13.)

## II.  Legal Standard

### A.  Dismissal for Lack of Subject Matter Jurisdiction

"Congress and the Constitution together prescribe the bounds of federal courts' subject matter jurisdiction."  *Genband US LLC v. Metaswitch Networks Ltd*, No. 2:16-CV-00582-JRG, 2017 WL 1246366, at *2 (E.D. Tex. Mar. 31, 2017).  Article III of the Constitution in particular limits the exercise of the judicial power to "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  "[T]he doctrine of standing serves to identify those [cases and controversies] which are appropriately resolved through the judicial process."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  It imposes several requirements.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  First, a plaintiff must establish an "injury in fact" that is "concrete and particularized" rather than "conjectural or hypothetical."  *Id.* at 560 (internal quotation marks omitted).  Second, a plaintiff must draw a "fairly traceable" causal connection between their injury and the defendant.  *Id.* (internal ellipses and brackets omitted).  Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (internal quotation marks omitted).  Finally, when a plaintiff seeks injunctive relief "an additional inquiry is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury."  *James v. City of Dallas, Tex.*, 254 F.3d 551, 563 (5th

Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir.2012).

Each of these elements must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Here, Defendant has raised a "facial attack." (Dkt. No. 13 at 2-3.) Therefore, the Court "is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). *See also Martin v. Local 556, Transp. Workers Union of Am. AFL-CIO*, No. 3:14-CV-0500-D, 2014 WL 4358480, at *1 n.1 (N.D. Tex. Sept. 3, 2014) ("When a party makes a Rule 12(b)(1) motion without including evidence . . . [t]he court assesses [the] challenge as it does a Rule 12(b)(6) motion . . . .").

**B. Dismissal for Failure to State a Claim**

A motion to dismiss should generally be granted when a complaint fails to state a plausible claim for relief even where all well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, claims based in fraud must go further by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

When considering such a motion, the court may rely on "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[M]atters or theories raised in a response are not part of the

pleadings" and do not supplement the allegations in the complaint. *Lohr v. Gilman*, No. 3:15-CV-1931-L, 2017 WL 1178259, at *11 (N.D. Tex. Mar. 30, 2017).

## III.   Discussion

### A.   Subject Matter Jurisdiction

The Court begins by considering whether Plaintiff has standing to bring claims either in an individual or representative capacity. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack . . . .").

#### 1.   Plaintiff's Individual Sanding

##### i.   Fraud Claims

Defendant argues that because Plaintiff does not identify the false statements that he relied on with particularity – *i.e.* what products Plaintiff purchased, where he purchased them, and when – Plaintiff lacks standing to bring his claims. (Dkt. No. 13 at 4.) Obviously, if Plaintiff did not purchase *any* products from Ace Hardware, then he would lack standing to bring a claim based on false statements made in relation to Ace Hardware products. However, Plaintiff does allege that he purchased products from Ace Hardware in reliance on allegedly false statements about whether those products were solid brass. (Dkt. No. 1 at ¶¶ 1, 16, 27, 35.) Defendant's insistence that Plaintiff identify which products he purchased, including where he purchased them and when, conflates Article III with Federal Rule of Civil Procedure 9(b). Each demands a distinct inquiry. At the pleading stage, Article III requires no more than "general factual allegations" of an injury that is concrete, particularized to the plaintiff, and which is actual or imminent as well as traceable to the defendant and redressable by the Court. *Lujan*, 504 U.S. at 561.[1] Here, Plaintiff alleges that

---

[1] *See also Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (applying the *Lujan* standard with regard to standing for claims based on fraud); *Taylor v. Nike, Inc.*, No. 3:16-CV-00661-MO, 2017 WL 663056, at *2 (D. Or. Feb. 17,

he purchased products from Ace Hardware believing they were made entirely of brass because of specific statements Ace Hardware made about its products. (Dkt. No. 1 at ¶¶ 1, 15, 16, 27, 35.) According to Plaintiff, however, these products are actually not made of solid brass and, as a result, Plaintiff avers that he (and his putative class members) overpaid for inferior products.[2] (Dkt. No. 1 at ¶¶ 9-16 (describing why solid brass products are superior).) These allegations are sufficient to confer standing under Article III. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (finding allegations "sufficient for standing purposes" where plaintiffs sought "recovery for their actual economic harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain"). Such allegations also directly connect the alleged injury – overpaying for certain products – to the defendant, who allegedly made the statements upon which Plaintiff relied. Finally, the harm alleged by Plaintiff can be redressed through a favorable decision.

Accordingly, the Court finds that Plaintiff does have standing under Article III to bring his claims against Ace Hardware.

### ii. Injunctive Relief

Defendant argues that Plaintiff lacks standing to pursue injunctive relief because "[t]he Complaint . . . fails to allege that Plaintiff intends to purchase such products again in the future." (Dkt. No. 13 at 6.) Here, the Court agrees. At most, the Complaint alleges an unspecified "imminent likelihood of continuing irreparable injury." Such a conclusory allegation is not sufficient to confer standing for injunctive relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)

---

2017) ("[E]ven if Ms. Taylor's claims are insufficient under the heightened pleading standard of Rule 9(b), they are sufficient to provide Ms. Taylor with standing under Article III."); *Bilodeau v. McAfee, Inc.*, No. 12-CV-04589-LHK, 2013 WL 3200658, at *5-7 (N.D. Cal. June 24, 2013) (finding Article III satisfied even though Rule 9(b) was not); *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750, 756 (N.D. Ill. 2014) (same).

[2] Defendant did not ask the Court to dismiss this case because the products Plaintiff purchased are not actually lower quality. (Dkt. No. 13 at 1-2 (asserting that products as sold were actually "stronger" than pure brass components, but concluding that "these issues need not be addressed now").)

("These bare assertions . . . are conclusory and not entitled to be assumed true."). *See also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 296 (S.D.N.Y. 2015) (no standing without allegation of intent to purchase product in the future); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 980-81 (C.D. Cal. 2015) (same and collecting cases); *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 15-CV-5070, 2017 WL 2215025, at *8 (N.D. Ill. May 19, 2017) (same); *Barron v. Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *11 (S.D. Fla. Mar. 20, 2015) (same); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 379 (D.N.J. 2015) (same); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Plaintiff argues in its Response that "[t]aken in the light most favorable to Dragoslavic, these allegations [discussed *supra*] must mean Dragoslavic is likely in the future to rely upon the 'Solid Brass' statement by Ace and purchase a product from Ace that is not made of solid brass." (Dkt. No. 17 at 6.) However, construing allegations in favor of the Plaintiff does not mean the Court should, or can, buttress the Complaint based on new arguments raised in a response. "[A] court is limited to consideration of the pleadings, and matters or theories raised in a response are not part of the pleadings." *Lohr*, No. 3:15-CV-1931-L, 2017 WL 1178259, at *11.

Accordingly, the Court finds that Plaintiff lacks standing to pursue injunctive relief based on the allegations in the Complaint.[3]

## 2. Standing on Behalf of Putative Class Members

Defendant argues that Plaintiff cannot pursue claims on behalf of putative class members from states in which Plaintiff himself did not purchase any products and does not reside. (Dkt.

---

[3] The Court declines to resolve whether the allegation that Dragoslavic would purchase a product from Ace Hardware satisfies Article III, *see, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (finding standing but noting contrary authority); *Neuman v. L'Oreal USA S/D, Inc.*, No. 1:14-CV-01615, 2014 WL 5149288, at *2 (N.D. Ohio Oct. 14, 2014) (finding no standing but noting contrary authority); *Duran v. Creek*, No. 3:15-CV-05497-LB, 2016 WL 1191685, at *6-7 (N.D. Cal. Mar. 28, 2016) (collecting various approaches), because that question is not presented here based on the allegations in the Complaint.

No. 13 at 10–12.)  This argument raises an important question with respect to Article III and class actions.  *See, e.g., Davis v. Am. Nat. Bank of Texas*, No. 4:12CV382, 2013 WL 1195695, at *3 (E.D. Tex. Mar. 22, 2013) (noting "lack of clarity in the case law" on this issue); *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 143 (D.D.C. 2016) (collecting various approaches).

Plaintiff responds by pointing to *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997))), declaring categorically that "Rule 23 certification issues should be addressed before examining the standing requirements for other class members."  (Dkt. No. 17 at 9-10.)  In *Ortiz* and *Amchem*, the Supreme Court recognized that in some cases class certification issues are "logically antecedent" to standing issues and therefore should be resolved first.  *Ortiz*, 527 U.S. at 831; *Amchem*, 521 U.S. at 592.  The Fifth Circuit has described this approach as a "limited exception" to the requirements of Article III that is available when "class certification . . . create[s] the jurisdictional issue." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002).  Otherwise, the general rule is that standing must be assessed *before* a class is certified.  *Id.* at 319.

Courts are divided on whether a plaintiff's standing to bring claims under the laws of multiple states on behalf of putative class members of those states is considered "logically antecedent" to class certification.  *Compare Sheet Metal Workers Nat. Health Fund v. Amgen Inc.*, No. CIV. A. 07-5295 SRC, 2008 WL 3833577, at *9 (D.N.J. Aug. 13, 2008) ("[T]he question of Article III standing to bring each state antitrust claim arises precisely because SMW seeks to prosecute the state claims on behalf of a class . . . .") *with Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331, at *7 (D. Colo. July 14, 2011) (concluding that whether plaintiff has standing to bring claims under the laws of various states is not "logically antecedent" to class certification because "[t]he question is relevant whether or not the class is certified").

Other courts have limited the "logically antecedent" approach taken in *Ortiz* and *Amchem* to cases in which the court is "facing simultaneous class certification and Article III standing issues." *Catlin v. Hanser*, No. 1:10-CV-0451-LJM-DML, 2011 WL 1002736, at *7 (S.D. Ind. Mar. 17, 2011). Some courts have also limited *Ortiz* and *Amchem*, which both involved complex asbestos class actions, to "extremely complex case[s] defying customary judicial administration." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 CIV. 4885(SWK), 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 19, 2005).

On balance, the Court is persuaded that the "limited exception" recognized in *Ortiz* and *Amchem* does not apply here. Plaintiff seeks redress "[o]n behalf of *himself* and other Class members." (Dkt. No. 1 at ¶ 86 (emphasis added).) The underlying question of whether he has standing to bring claims under the laws of states in which he does not reside and was not injured will therefore be relevant regardless of whether the putative class is certified. *See, e.g., Valverde v. Xclusive Staffing, Inc.*, No. 16-CV-00671-RM-MJW, 2017 WL 1386351, at *8 (D. Colo. Feb. 23, 2017). It is not "logically antecedent" to class certification because the latter has no effect on the former. *Id.*

Turning to the question of standing, Defendant argues that a putative class representative lacks Article III standing to bring claims under the laws of states in which he does not reside or was not injured. (Dkt. No. 13 at 11.) However, this Court is not persuaded that where a plaintiff resides or suffers an injury has anything to do with Article III standing. Judge Easterbrook addressed a similar issue in *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533 (7th Cir. 2011) and reached the same conclusion. In *Morrison*, plaintiffs sought to represent a class of consumers from multiple states in claims against an Illinois company under the Illinois Consumer Fraud Act. 649 F.3d at 535. Defendants argued that putative class members from states other than Illinois lacked

standing because they did not live in Illinois. *Id.* Judge Easterbrook reasoned that where the putative class members lived had nothing to do with standing because the "class members (no matter where they live) have an Article III controversy with [the defendant]." *Id.* at 536. He then explained that Article III demands a concrete injury traceable to the defendant that is redressable by a judicial decision and "[n]othing more." *Id.* This Court agrees.

*Gratz v. Bollinger*, 539 U.S. 244 (2003) is also instructive. In *Gratz*, the dissent argued that the named plaintiff lacked standing to bring claims on behalf of class members who had sought admission to the University of Michigan through the undergraduate *freshman* admissions process because the representative plaintiff had sought admission through the undergraduate *transfer* admissions process. 539 U.S. at 262-63. Writing for the majority, Chief Justice Rehnquist began by acknowledging that there was "tension" in prior Supreme Court cases regarding "whether such an inquiry . . . is appropriately addressed under the rubric of standing or adequacy." *Id.* at 263 n.15. However, the Court concluded that standing, even if it were the appropriate inquiry, was "clearly satisfied" because the use of race in undergraduate and transfer admissions "[did] not implicate a significantly different set of concerns." *Id.* at 263, 265.

Defendant's insistence that standing is linked to residency or the location of an injury is at best imprecise and at worst invites into the standing analysis extraneous arguments about whether a plaintiff has stated a claim for relief or demonstrated that class certification is appropriate. Neither inquiry is appropriately resolved through the doctrine of standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 n.4 (2014) (Scalia, J.) ("[T]he absence of a valid . . . cause of action does not implicate subject-matter jurisdiction"); *Gratz*, 539 U.S. at 263 n.15. "Like the out-state-plaintiffs in *Morrison*, the fact that [Plaintiff] does not live, nor was injured, in the [several] states under which his claim may arise is of no constitutional moment."

*Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1112 (E.D. Wis. 2016). Other tools and doctrines are available to address the propriety of resolving claims arising under the laws of multiple states in a single lawsuit. *See, e.g., Morrison*, 649 F.3d at 536 (noting that the difficulty of managing "a class action arising under the consumer-fraud laws of all 50 states" "has nothing to do with *standing*" and should be addressed through other means); *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016) ("It is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing."); *Porter v. NBTY, Inc.*, No. 15 CV 11459, 2016 WL 6948379, at *4 (N.D. Ill. Nov. 28, 2016) ("Plaintiffs may lack prudential standing to pursue claims under the laws of other states, plaintiffs might not have claims on the merits of other states' laws . . ., and plaintiffs might not be adequate class representatives, but these are not Article III problems."); *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents— does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

Ultimately, Defendant's reliance on Article III to attack whether Dragoslavic can or should represent putative class members from other states is misplaced. Said another way, standing is the wrong conceptual framework for this purpose. Dragoslavic has been injured and he seeks to bring claims on behalf of himself and others who have purportedly suffered a similar injury at the hands of the same defendant based on the same allegedly misleading statements. This clearly presents a case or controversy between Plaintiff, the putative class members, and Defendant (as in *Morrison*). Article III demands "[n]othing more." *Morrison*, 649 F.3d 536.

Defendant's remaining arguments, such as the propriety of certifying a nationwide class or permitting Plaintiff to proceed with classwide fraud claims, also do not implicate standing. *See, e.g., Morrison*, 649 F.3d. at 536 ("That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction . . . ."); *Gratz*, 539 U.S. at 263 n.15. Therefore, the Court proceeds to analyze Defendant's arguments under 12(b)(6).

## B. <u>Failure to State a Claim</u>

### 1. <u>The Scope of Rule 9(b)</u>

At the outset, the Parties dispute the extent to which Rule 9(b)'s heightened pleading standard should be applied here. In particular, Plaintiff argues that its negligent misrepresentation claim is not subject to the requirements of Rule 9(b). (Dkt. No. 17 at 2 n.2.) To support their position, Plaintiff cites *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662 (5th Cir. 2004) (unpublished), in which the Fifth Circuit distinguished and narrowed several previous decisions where it had suggested that negligent misrepresentation claims are subject to Rule 9(b)'s heightened pleading standards. 115 F. App'x at 669 n.30 (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir.2003)). However, in *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010), the Fifth Circuit concluded that claims based on "fraud and negligent misrepresentation . . . must [be] plead . . . with particularity under Fed. Rule Civ. Proc. 9(b)." 594 F.3d at 387 (citing *Benchmark*, 343 F.3d at 723–24 (5th Cir.2003)). *See also SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) (concluding that Rule 9(b) applies "to all averments of fraud, whether they are part of a claim of fraud or . . . statutory claims based on allegations of fraud" and collecting cases). This Court therefore applies the heightened pleading standard established by Rule 9(b) to all of

Plaintiff's claims in light of *Lone Star Fund* and because the gravamen of Plaintiff's allegations is fraud. *See* (Dkt. No. 1 at ¶ 28.)

### 2. <u>Application of Rule 9(b)</u>

Defendant's central argument is that Plaintiff has failed to state his claim with particularity because he leaves open the question of exactly what he purchased, when he purchased it, and where. Plaintiff argues that this sort of detail is not necessary. As Plaintiff explains, the Complaint identifies what the allegedly fraudulent statements were (that products were solid brass), who made them (Ace Hardware), and where they were made (on product packaging). (Dkt. No. 17 at 2-5.)

The Court finds that the Complaint contains at least two fatal defects. First, the "Falsely Marked Products" at issue in this case are described in the Complaint only as "certain products" that were at some point allegedly marked as "Solid Brass." (Dkt. No. 1 at ¶ 1.) However, Rule 9(b) does not permit a Plaintiff to proceed to discovery based on allegations against an entirely open-ended category of products without some additional specificity. *See, e.g., Keczer v. Tetley USA, Inc.*, No. 5:12-CV-02409 EJD, 2013 WL 4455282, at *3 (N.D. Cal. Aug. 16, 2013) (explaining that Plaintiff's allegations against "'Misbranded Food Products' purport[ed] to encapsulate an open-ended class of . . . products" and concluding that such allegations failed to satisfy Rule 9(b)); *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009) ("Rule 9(b) does not permit a party to make conclusory allegations and then, through the discovery process, gain more specific information and amend his pleadings to satisfy the particularity requirement."); *Webb v. Everhome Mortg.*, No. 17-10243, 2017 WL 3121983, at *2 (5th Cir. July 21, 2017) (dismissal under Rule 9(b) is appropriate even where "missing details . . . can be easily determined through discovery"). Second, the Complaint does not identify when or where Plaintiff purchased any of the "Falsely Marked Products." Rule 9(b) requires these details to be set forth

with particularity in the Complaint. *See, e.g., Gedalia v. Whole Foods Market Servs., Inc.*, 53 F. Supp. 3d. 943, 959 (S.D. Tex. 2014) (dismissing claims because the complaint identified only "a general time frame" during which products were allegedly purchased and failed to identify specific locations where the products were sold).

Accordingly, the Court is persuaded that Plaintiff has not satisfied Rule 9(b).[4]

## IV.    Conclusion

For the reasons set forth herein, Defendant's Motion to Dismiss (Dkt. No. 13) is **GRANTED**. Clarifying that this dismissal is without prejudice, the Court **GRANTS** Plaintiff leave to amend its Complaint within fourteen days of this Order.

**So ORDERED and SIGNED this 16th day of August, 2017.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[4] The Court does not resolve Defendant's remaining arguments because they are now moot. Defendant may re-urge these arguments should Plaintiff amend its Complaint as allowed herein.